**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1108**

---

ROLAND F. CHALIFOUX, JR., D.O.,

         Plaintiff - Appellant,

     v.

WETZEL COUNTY HOSPITAL, INC.; WEST VIRGINIA UNITED HEALTH
SYSTEM, INC., d/b/a West Virginia University Health System, d/b/a WVU Health
System; DONALD BLUM, M.D.; NIRAJ MOHAN, M.D.; MATTHEW SOKOS,
M.D.; HANY TADROS, M.D.; SEAN SMITH; JESSICA HUFFMAN,

         Defendants - Appellees.

---

Appeal from the United States District Court for the Northern District of West Virginia, at
Wheeling. John Preston Bailey, District Judge. (5:22-cv-00313-JPB)

---

Argued: January 28, 2025                     Decided: July 8, 2025

---

Before WILKINSON and AGEE, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Andrew Layton Schlafly, Far Hills, New Jersey, for Appellant. Eugene
Anthony Giotto, COZEN O'CONNOR, Pittsburgh, Pennsylvania, for Appellees. **ON
BRIEF:** Christine S. Vaglienti, Nathan R. Hamons, Legal Services, WEST VIRGINIA
UNITED HEALTH SYSTEM, INC., Morgantown, West Virginia; Joan Taylor, COZEN
O'CONNOR, Philadelphia, Pennsylvania, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Doctor of Osteopathic Medicine Roland Chalifoux, Jr., appeals from the district court's judgment granting Defendant-Appellee Wetzel County Hospital's (WCH)[1] motion to enforce a settlement agreement. WCH's Executive Committee recommended the revocation of Dr. Chalifoux's privileges to practice as an interventional pain management specialist following an investigation initiated when a nurse reported an incident with a patient. The hospital's Board of Directors upheld that decision. Dr. Chalifoux subsequently brought this action against WCH alleging unlawful restraint of trade, defamation, tortious interference with contract, due process violations, and conspiracy.

The parties engaged in settlement negotiations and agreed to non-economic terms of the settlement. Later, during mediation, Dr. Chalifoux put forth a bracketed economic settlement offer with a midpoint of $300,000. WCH accepted the settlement terms several days later, but Dr. Chalifoux refused to sign the settlement agreement. WCH subsequently moved to enforce the settlement agreement. After reviewing the parties' communications and their factual assertions as to the settlement discussions, the district court granted the motion. Dr. Chalifoux appeals. We affirm.

I.

---

[1] The Defendant-Appellees in this matter are Wetzel County Hospital, its parent, West Virginia University Health, and the physicians serving on the hospital's Medical Executive Committee in their official capacities. We collectively refer to these parties as "WCH" except where context requires.

Before recounting the relevant facts and proceedings culminating in this appeal, we make clear the scope of the matters before us. This case has its origins in allegations that Dr. Chalifoux failed to adhere to certain professional standards. However, the only questions before us concern the district court's judgment on WCH's motion to enforce a purported settlement agreement and related issues; we express no opinion on the merits of allegations of inadequate performance in the practice of medicine. With our ambit set out, we proceed to this case's factual and procedural history.

a.

Roland Chalifoux, Jr., is a Doctor of Osteopathic Medicine specializing in "interventional pain management." J.A. 13. He held clinical privileges as an independent contractor at the Wetzel County Hospital located in New Martinsville, West Virginia, for approximately 12 years prior to the events giving rise to this litigation. In June 2022, Dr. Chalifoux performed a pain pump trial procedure. A nurse present during the procedure filed a patient safety complaint with hospital administration expressing her concerns about the patient's exclamations of pain and Dr. Chalifoux's inattention to the patient's elevated blood pressure during the procedure.

The Hospital's Medical Executive Committee investigated the incident and summarily suspended Dr. Chalifoux's privileges ten days later, stating it had done so in the interest of patient care and safety. He requested a hearing, which was held in July 2022. Counsel for the parties presented and cross-examined witnesses. Following the hearing, the Committee remained concerned about patient safety if a similar incident were to occur

4

and recommended the termination of Dr. Chalifoux's privileges. He then appealed the termination to the Hospital's Board of Directors. The Board upheld the termination after reviewing a position statement Dr. Chalifoux submitted, the evidence before the Executive Committee, and the Executive Committee's report and recommendation.

WCH subsequently reported Dr. Chalifoux's suspension to the National Practitioner Data Bank (NPDB). The NPDB is a repository for information about adverse actions taken against physicians. Rather than relying on only state-by-state licensing records, the NPDB allows a facility or clinic to look up whether a particular doctor may have had their privileges revoked or been otherwise disciplined in some way in a different licensing jurisdiction. When Congress passed the Health Care Quality Improvement Act (HCQIA), it directed the creation of the NPDB after recognizing a "national need" to "restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101(2).

Relevant here, regulations promulgated under the statute require a hospital facility to file a report with the NPDB when it takes "[a]ny professional review action that adversely affects the clinical privileges of a physician . . . for a period longer than 30 days." 45 C.F.R. § 60.12(a)(1)(i). Therefore, because WCH revoked Dr. Chalifoux's privileges for a period longer than 30 days, it was bound by regulation to report the revocation to the NPDB.

These regulations also establish procedures to dispute a data bank entry. First, the subject of a report can ask the NPDB to mark an entry into "disputed status," and if the

reporting entity — here, WCH — declines to revise the report, the subject can request the Secretary of Health and Human Services to review the report for accuracy.  *Id.* § 60.21(b).  The subject can also append a statement to the NPDB entry.  *See id.*  Dr. Chalifoux has appended his statement to the NPDB entry WCH made after revoking his clinical privileges.  The subject can also directly request that the Secretary review the accuracy of the reported information, but the Secretary does not review the underlying merits of the allegations of deficient performance, the appropriateness of alterations to hospital privileges, or the due process the subject received.  *See id.* § 60.21(c).

WCH also reported the revocation of Dr. Chalifoux's privileges to the West Virginia Board of Osteopathic Medicine (WVBOM), which in turn instituted a complaint against him.  Dr. Chalifoux contested the WVBOM complaint, and it dismissed the matter upon review of Dr. Chalifoux's statement, medical records from the procedure, and the opinion of another neurologist regarding the standard of care.  The outcome of this proceeding, which is separate from WCH procedures, did not affect the revocation of Dr. Chalifoux's privileges at the hospital.  *See* W. Va. Code § 30-14-12a(b) ("any investigation by the board or any disposition of a case by the board does not preclude any action by a hospital . . . to . . . revoke the privileges or membership of such osteopathic physician").

b.

Dr. Chalifoux sued WCH in December 2022.  He alleged (1) that WCH had violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, because it was monopolizing the relevant market for interventional pain management services; (2) that WCH had breached

6

its own bylaws and denied him due process; (3) that WCH defamed him by reporting the privilege revocation to the NPDB and the WVBOM; (4) that the Defendants conspired to commit the foregoing; and (5) that WCH had tortiously interfered with his contractual relationship with health insurance providers.

In August 2023, following several months of motion practice, the district court granted Dr. Chalifoux's unopposed motion to stay discovery and other deadlines so that the parties could engage in voluntary mediation. A formal mediation was scheduled for October 2023, and the record shows that the parties' counsel informally discussed settlement terms beginning in August. WCH transmitted a proposed settlement agreement to Dr. Chalifoux's attorney, Scott Kaminski, that month. The agreement provided for the release of all claims, restrictions on Dr. Chalifoux seeking employment with WCH or affiliated facilities, a non-disparagement provision applying to Dr. Chalifoux, trade secret and confidentiality protections, and requirements that both parties comply with court orders. Kaminski replied that these non-economic terms were acceptable to Dr. Chalifoux, assuming the inclusion of additional terms providing that settlement payment shall be payable to Dr. Chalifoux and Kaminski's firm and a mutual non-disparagement clause applying to all parties. WCH Counsel agreed to incorporate these matters into the non-economic terms of settlement. WCH also communicated a monetary offer of $75,000, which Kaminski stated he would relay to Dr. Chalifoux.

It appears from the record that the substance of a settlement was not discussed again until the parties' formal mediation on October 5, 2023. Towards the end of that day, the mediator suggested each side propose a bracketed cash settlement amount. Dr. Chalifoux

proposed a settlement range of $200,000 to $400,000; WCH proposed a $140,000 to $210,000 range. Around 4:00 pm, the mediator stated that Dr. Chalifoux was "going to take a walk outside." J.A. 102. But apparently, he instead departed for the day and did not return.

The parties held a court-ordered planning meeting and set out a discovery plan on November 8. That same day, WCH counsel emailed Kaminski asking about the status of the offers made at the mediation held a month prior. Kaminski responded, stating that Dr. Chalifoux's bracketed offer of $200,000 to $400,000 had not been withdrawn and that he had authority to accept at the midpoint of $300,000. Kaminski further stated that Dr. Chalifoux had not withdrawn authority to facilitate the settlement. WCH counsel responded shortly thereafter stating he had been authorized to settle the case for $300,000, including the previously discussed non-economic terms. WCH then accepted the $300,000 demand. Emails in the record show the parties' counsel finalized the mutual non-disparagement provisions that afternoon.

Kaminski informed Dr. Chalifoux that WCH had accepted the last demand he had made in mediation. Dr. Chalifoux refused to sign the settlement agreement, stating that the bracketed demand made at mediation had been withdrawn. Shortly thereafter, WCH filed a motion to enforce the settlement agreement. WCH recognized that our precedent requires the district court to find that the parties reached a settlement agreement and decide whether the terms of such agreement can be determined before granting a motion to enforce a settlement. *See Moore v. Beaufort Cnty.*, 936 F.2d 159, 162 (4th Cir. 1991). And it argued that, in this case, objective evidence supported a finding that the parties had reached

a binding agreement and that the terms of that agreement could be ascertained. Dr. Chalifoux opposed the motion, and the district court set a hearing on the matter for December 2023.

At the hearing, WCH counsel and Dr. Chalifoux each presented argument; Dr. Chalifoux offered evidence in the form of email correspondence between himself and Kaminski and Kaminski and WCH counsel for the court's *in camera* review. Dr. Chalifoux also requested that the district court strike the confidentiality clause from the settlement agreement if it granted the motion, arguing that WCH had breached that provision when it submitted the terms of the agreement with its motion to enforce.

The district court granted WCH's motion to enforce the settlement. The court found that although Dr. Chalifoux left the mediation, neither his $200,000 to $400,000 demand nor Kaminski's authority to settle the case upon WCH's acceptance of that demand — at least for $300,000 — had been withdrawn. Further, it found the terms of the agreement could be determined based upon the terms of the settlement exchanged between Kaminski and WCH counsel and their related correspondence. After the court ruled, Dr. Chalifoux himself requested the court order WCH to withdraw its NPDB report. The court declined to do so.

Dr. Chalifoux filed a motion to reopen the matter and set aside the district court's ruling. He argued that there was no meeting of the minds on settlement terms, that revocation of the NPDB entry was a condition precedent to any settlement, and that Kaminski lacked authority to settle the case. The district court denied this motion in January 2024. It found that there was a meeting of the minds and that voiding of the NPDB

9

report was a legal impossibility. It noted that none of the exceptions permitting a facility to withdraw such a report were present, and that following an initial discussion in March 2023, the NPDB report was never again discussed until after the purported settlement had been reached. Finally, the court found that Kaminski possessed authority to settle the case upon WCH's acceptance of the $300,000 demand made at mediation.

Dr. Chalifoux timely noticed his appeal.


## II.

Dr. Chalifoux asserts that the district court erred by not conducting an evidentiary hearing on WCH's motion, that Kaminski was not authorized to settle the case, and that no meeting of the minds occurred. He also contends that the district court's legal conclusion with respect to voiding the NPDB report was erroneous. Lastly, he argues that WCH's disclosure of settlement terms in its motion papers warrants negating any settlement that may exist. We address these arguments in turn, beginning with the sufficiency of the hearing on WCH's motion before turning to those cutting to the heart of the matter — whether the district court's rulings on WCH's motion require reversal.


### a.

It is within the district court's "inherent power to enforce a settlement agreement." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). To exercise that power, the court "(1) must find that the parties reached a complete agreement" and "(2) must be able to determine its terms and conditions." *Id.* at 540–41. The district court's authority

10

to grant a motion to enforce, then, "depends on there being a complete settlement agreement." *Smith-Phifer v. City of Charlotte*, 118 F.4th 598, 610 (4th Cir. 2024).

We have also recently explained that, given the fact-bound nature of this determination, a district court "cannot always" grant such a motion summarily. *See id.* "'[I]f there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms,' a district court 'must conduct a plenary evidentiary hearing in order to resolve that dispute, and make findings on the issues in dispute.'" *Id.* (quoting *Hensley*, 277 F.3d at 541).

The district court conducted a hearing on WCH's motion to enforce the purported settlement agreement. At that hearing, the district court considered arguments in favor of granting the motion from WCH counsel, and arguments against granting the motion from attorney Kaminski on behalf of Dr. Chalifoux. Dr. Chalifoux also proffered about 25 pages of attorney-client communication for *in camera* review. In making its rulings, the district court relied upon the attachments to WCH's motion to enforce (consisting of communications between Kaminski and WCH counsel and proposed settlement terms), the parties' arguments at the hearing, and the privileged communications.

Dr. Chalifoux submits that this hearing did not afford him due process and that the court failed to abide by the Rules of Evidence. He argues that the documents reviewed were inadmissible hearsay and that the hearing was not actually a "plenary evidentiary hearing" because Dr. Chalifoux did not himself testify at the hearing. Opening Br. 27–29. And he in turn argues this contravenes our decision in *Hensley*. In *Hensley*, we vacated the district court's order granting a motion to enforce because the only "hearing" conducted

11

was an off-the-record conference in which the court neither took evidence nor made factual findings, despite the presence of factual disputes. *See* 277 F.3d at 541; *see also Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981) ("when there is a substantial factual dispute . . . the trial court must hold an evidentiary hearing in order to resolve that dispute").

Conversely, here, the hearing was held on the record. The court received evidence and considered argument from both parties, and it subsequently made its decision on the record. This was not erroneous. Dr. Chalifoux states that the district court relied upon inadmissible hearsay, but no party objected to the admission of the documents for *in camera* review or to those WCH initially submitted to support its motion. Therefore, he raises this argument for the first time before this Court.

"It is well established that this court does not consider issues raised for the first time on appeal, absent exceptional circumstances." *Tarashuk v. Givens*, 53 F.4th 154, 167 (4th Cir. 2022) (quoting *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020)). Dr. Chalifoux also asserts that he was not permitted to testify at the hearing, which he contends rendered it insufficient as a matter of law. But the record reveals that Dr. Chalifoux never even sought to testify at the hearing, submit an affidavit, nor file a declaration, so this argument, too, is raised for the first time before this Court.

The burden lies with Dr. Chalifoux to show that "exceptional circumstances" exist to consider these new arguments on appeal; those exceptional circumstances must demonstrate "fundamental error or a denial of fundamental justice." *Id.* (internal quotation marks omitted) (quoting *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014)) . But Dr.

Chalifoux does not point to any exceptional circumstances, nor does he address the fundamental error standard to justify our review. *See, e.g., id.* (declining to address newly raised argument when party does not attempt to show exceptional circumstances). Finally, even if that showing could be made, it appears that the district court conducted a hearing, took evidence, and made findings on the record as our precedent requires, despite Dr. Chalifoux's contrary assertions. *See Hensley*, 277 F.3d at 541. And as we have explained, Dr. Chalifoux was not prohibited from testifying at the hearing. He simply did not ask to do so until after the court had granted WCH's motion.

Accordingly, Dr. Chalifoux's argument that the district court failed to conduct a required "plenary evidentiary hearing" fail.

### b.

We now address the arguments at the core of this appeal: the district court's grant of WCH's motion to enforce. A district court's decision to enforce a settlement agreement is reviewed for an abuse of discretion. *Smith-Phifer*, 118 F.4th at 611. Whether the parties reached a complete agreement is reviewed for clear error, but the meaning of a term in an agreement is a question of law reviewed de novo. *Id.* The existence and scope of an agency relationship is generally a question of fact, *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019), so we also review those findings for clear error. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir. 2002)

The district court in this case found that Kaminski's authority to settle the case for $300,000 had not been withdrawn when WCH accepted that demand by email. Elaborating

further in its order denying Dr. Chalifoux's motion to reopen the matter and set aside its prior ruling, the court also emphasized the fact that West Virginia, where the relevant events occurred, recognizes that an agent's authority to take a particular action — such as settling litigation — can be inferred. J.A. 171 (citing *Gen. Elec. Credit Corp. v. Fields*, 133 S.E.2d 780, 783 (W. Va. 1963)). And the court also acknowledged that under West Virginia law "[w]hen an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to clearly show the want of authority." J.A. 172 (quoting *Sanson v. Brandywine Homes, Inc.*, 599 S.E.2d 730, 735 (W. Va. 2004)).

The court then reasoned that Kaminski had represented Dr. Chalifoux not only in court, but in settlement negotiations and at the mediation — emphasizing that Chalifoux himself was present at the mediation. The court also noted that Kaminski had continued to represent Dr. Chalifoux after the mediation. And the district court did not glean from the record a showing that Dr. Chalifoux indicated to WCH that "there was any reason to doubt that his own lawyer, in their settlement discussions, could not speak on his behalf with regard to a settlement offer acceptance." *Id.* The district court granted WCH's motion to enforce the settlement, concluding that Kaminski had authority to agree to the hospital's acceptance of the demand made in mediation, and in its order on Dr. Chalifoux's motion to reopen explained that it was based on Kaminski's apparent authority.

Dr. Chalifoux disagrees and argues that Kaminski in fact held no authority to settle. He principally relies upon our decision in *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226 (4th Cir. 1996). In *Auvil*, we considered whether a client had cloaked his attorney with apparent

14

authority to settle a case. *See id.* at 229–31. We concluded that the district court erred when it found an attorney possessed apparent authority to settle based upon evidence that only tended to show that the attorney was authorized to negotiate the terms of a settlement. *See id.* at 230. We also explained the generally accepted rule that an attorney retained to represent a client in litigation is impliedly authorized to conduct that litigation and negotiate its resolution but lacks implied authority to make "substantive decisions" like whether to settle. *Id.* at 229–30 (internal brackets omitted) (quoting *Schafer v. Barrier Island Station, Inc.*, 946 F.2d 1075, 1079 (4th Cir. 1991)).

Further, we emphasized in *Auvil* that "an agent cannot create his own authority to represent a principal," so the district court erred when it found that the attorney possessed apparent authority to settle based only upon his own representations to the opposing party. *Id.* at 230. Accordingly, we returned the case to the district court for it to determine in the first instance whether the client had expressly authorized his attorney to settle. *See id.* at 231.

The district court in this case found that Kaminski possessed apparent authority and did not exceed it in executing the settlement agreement. "Apparent authority results from a principal's manifestation of an agent's authority to a third party, regardless of the actual understanding between the principal and agent." *Sing Fuels Pte Ltd. v. M/V Lila Shanghai*, 39 F.4th 263, 275 (4th Cir. 2022) (quoting *Auvil*, 92 F.3d at 230); *see also* Restatement (Third) of Agency § 2.03 (2006). The relevant conduct here is that of the principal who, by "acts or omissions, causes a third party to rely on the agent's authority to act on the principal's behalf." *Sing Fuels*, 39 F.4th at 275. That third party — here, WCH — must

"exercise 'good faith' and 'reasonable prudence' in their reliance upon the apparent agent."
*Id.* (quoting *Auvil*, 92 F.3d at 230).

We have reviewed the record, and we conclude that ample evidence supports the
district court's finding that Kaminski had apparent authority to settle the litigation upon
WCH's acceptance of the demand made at mediation.  Therefore, its finding was not clearly
erroneous.  *See id.* at 275–76 (agency relationship is a factual finding reviewed for clear
error and collecting cases).

Dr. Chalifoux highlights our holding in *Auvil* that when a client retains an attorney
to represent them in litigation, they do not, without more, impliedly authorize the attorney
to make "substantive decisions" like whether to settle.  *See* 92 F.3d at 230 (internal brackets
omitted).  And, as we have discussed, that is a correct reading of our case law.  *See id*; *see
also Sing Fuels*, 39 F.4th at 275.  But here, the district court was presented with sufficient
evidence to reach the conclusion that Dr. Chalifoux imbued Kaminski with apparent
authority to settle the case when WCH informed him it had accepted the demand made at
mediation.  Not only did Dr. Chalifoux retain Kaminski to represent him in his lawsuit
against WCH, he also permitted Kaminski to engage in substantive negotiations with WCH
counsel.  Perhaps most notably, Kaminski was substantially involved in the October 5
mediation, including the exchange of demands with respect to monetary terms of
settlements, with Dr. Chalifoux also present.

The evidence Dr. Chalifoux proffered at the hearing on WCH's motion to enforce
also supports the district court's ruling.  Dr. Chalifoux characterizes the communications
between himself and Kaminski as showing he had withdrawn authorization to reach any

16

settlement agreement. But those communications support a finding that Kaminski and his client discussed how to proceed from the apparent impasse at the mediation with respect to economic terms of settlement — not a total withdrawal of the mediation demand. Finally, that evidence also supports that Dr. Chalifoux had not informed Kaminski that he had changed position on the $200,000 to $400,000 demand made at mediation.

Put simply, the evidence supports the district court's conclusion that WCH could have reasonably understood Kaminski was authorized to settle due to Dr. Chalifoux's actions, and that he has also not rebutted the "strong presumption" of Kaminski's authority to settle. *See Sanson*, 599 S.E.2d at 735 (quoting *Miranosky v. Parson*, 161 S.E.2d 665, 667 (W.Va. 1968) (recognizing presumption under West Virginia law)). Accordingly, we are not "left with the definite and firm conviction that a mistake has been committed" which renders a factual finding clear error. *United States v. Perez*, 752 F.3d 398, 407 (4th Cir. 2014) (quoting *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012)). The district court's finding that Kaminski possessed apparent authority to settle the litigation premised upon Dr. Chalifoux's litigation conduct and the parties' communications was not clearly erroneous.

c.

Satisfied that the district court did not err when it found Kaminski possessed apparent authority to settle, we now turn to Dr. Chalifoux's argument that no meeting of the minds occurred. Specifically, he contends that the district court erred in noting it was "impossible" for WCH to void the report, and that it in turn erred by concluding that it

17

could not, as a matter of law, order such a provision be incorporated into the purported settlement. He argues that these were errors requiring reversal.

To the extent Dr. Chalifoux contends no meeting of the minds occurred with respect to settlement negotiations, we emphasize that we do not disturb the district court's finding that Kaminski had authority to settle. This means that the district court could look to Kaminski's interactions with WCH counsel in determining whether there was mutual assent as to terms of settlement, because Kaminski had authority to bind Dr. Chalifoux in a contractual agreement. *See Sing Fuels*, 39 F.4th at 275 ("An agent can bind a principal through apparent authority . . . .").

Dr. Chalifoux makes much of the district court's order on his motion to reopen. He casts the court as declining to incorporate a settlement provision requiring WCH to void the NPDB report into the settlement because of legal impossibility. However, we read the substance of the district court's order differently. The court's written order provided its reasoning for denying his motion to reopen the case. First, it explained its conclusion that there was a meeting of the minds in response to Dr. Chalifoux's argument that removal of the NPDB entry was a "condition precedent" to settlement. J.A. 168. The court noted that voiding the report was not an action WCH could take because no conditions permitting the voiding of an entry were satisfied: the report was not submitted in error; the revocation of privileges was reportable because it affected Dr. Chalifoux's privileges for longer than 30 days; and the revocation had not been overturned on appeal. The district court took this together with the factual circumstances of the settlement negotiations, noting that any discussion regarding the NPDB had ceased months before the parties' mediation and that

18

no communications — or proposed settlement agreements — indicated that this was a sticking point until after WCH agreed to settle for $300,000 and Dr. Chalifoux declined to sign the agreement.

The district court did not clearly err by finding that a requirement that WCH void the NPDB report was not part of the settlement agreement.  The record supports its conclusion: although Kaminski initially expressed the importance of removing the NPDB report, later communications made no mention of it.  In fact, those communications indicated that just prior to Dr. Chalifoux's request to stay the litigation for mediation, the parties had reached agreement on non-economic terms, pending the inclusion of a mutual non-disparagement clause and specification of to whom payment was due.  And all of this evidence, consisting of communications between the parties and documents they exchanged, was evidence the district court may rely upon in determining whether the parties reached complete agreement on the terms of settlement.  *See Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990) ("The fact that the alleged settlement was oral must not prevent the district court from fully considering the testimony of the witnesses and resolving any conflicting testimony."); *see also Hensley*, 277 F.3d at 540 (similar).  The district court conducted a hearing and resolved factual disputes about the settlement.  A finding that the NPDB report was not part of the settlement terms was not clear error.

Before turning to the last of Dr. Chalifoux's arguments, we address his contentions regarding the legal impossibility of voiding the NPDB report.  He specifically argues that the court erroneously assumed it was beyond its equitable power to require WCH to void

19

the NPDB report. There are two problems with this argument. First, the district court simply did not discuss its own equitable power or indicate that it was powerless under these circumstances. It is true that "[o]nce invoked, the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies." *Brown v. Plata*, 563 U.S. 493, 538 (2011) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978), *abrogation on other grounds recognized by Dep't of Agric. Rural Dev. Rural Housing Serv.*, 601 U.S. 42, 55–56 (2024) (internal quotation marks omitted). But the district court was not contemplating the limits of its equitable jurisdiction when it made its ruling.

Second, to the extent the district court made and relied upon a legal conclusion with respect to WCH lacking any justification to void the NPDB report, that conclusion was not error. As the district court observed, the "NPDB Guidebook" provides three circumstances under which a reporting entity like WCH can void a report: if it was submitted in error; if the action was not reportable; or if the action was overturned on appeal. *See* U.S. Dep't of Health & Hum. Servs. & Health Res. & Servs. Admin.*, NPDB Guidebook* E-8 (2018). Although it is neither a statute nor regulation, the guidebook appears to accurately represent the circumstances under which a report can be altered or removed from the data bank. For example, 45 C.F.R. § 60.6(a) requires that a facility inform the NPDB about an erroneous or unnecessary report, and § 60.6(b) requires a facility to provide the databank with revisions based upon "reversal of a professional review action or reinstatement of a license." In other words, the district court accurately described the circumstances that

20

would justify voiding an NPDB report, and it did not err when it considered these requirements in ruling on Dr. Chalifoux's motion to reopen.[2]

At bottom, we conclude that the district court did not abuse its discretion when it granted WCH's motion to enforce the settlement agreement.

### d.

Finally, Dr. Chalifoux argues that WCH's attorneys should be sanctioned for disclosing confidential information about the parties' mediation. When WCH moved to enforce the settlement agreement, its unsealed filings included a copy of the settlement agreement and communications between Kaminski and WCH counsel, which contained a summary of the events at mediation. Dr. Chalifoux contends disclosing this email publicly was "contrary to mediation and settlement protocols, and also contrary to the federal public policy of confidentiality as provided by HCQIA over this entire process." Opening Br. 37. He argues on appeal that a proper remedy would be to void the settlement agreement the district court found existed and had been agreed upon.

---

[2] We note here that it would seem to frustrate the entire purpose of the NPDB structure if a hospital could rescind or revise a properly made report for any reason, at any time. The HCQIA recognized that, prior to the NPDB, physicians who failed to adhere to professional standards of competency could more easily move from licensing jurisdiction to licensing jurisdiction, risking patient safety. *See* 42 U.S.C. § 11101. In light of patient safety concerns, it makes sense that the regulations implementing the NPDB would require that the report be mistakenly made or the revocation of clinical privileges, for example, be overturned on appeal to justify pulling a report from the data bank.

At the hearing on the motion to enforce, Dr. Chalifoux argued that disclosing confidential information was improper, and he contended that the proper remedy (assuming the court found a settlement agreement) would be to strike the confidentiality provisions from the agreement.  As embodied in the written agreement submitted with WCH's motion, the confidentiality terms generally limited the parties from publicly disclosing terms of settlement — including economic terms — unless required by law.  It also forbade Dr. Chalifoux from disclosing confidential or proprietary information about WCH, such as business practices, trade secrets, and non-public financial information.  The district court did not strike those provisions when it granted WCH's motion, but it did order the documents supporting the motion sealed.

We understand this argument as a request to impose a sanction upon WCH counsel in the form of voiding any settlement agreement.  Federal courts have "inherent authority" to sanction.  *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519 (4th Cir. 2018).  This authority derives from the courts' "certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.* (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (internal quotation marks omitted)).  We review a district court's decision to impose sanctions for abuse of discretion.  *See id.* at 518–19.

However, Dr. Chalifoux argues he is entitled to this remedy on this basis for the first time on appeal.  Before the district court, he requested only that the confidentiality provisions of any settlement agreement be stricken from that agreement; he made no argument regarding voiding the agreement entirely because of improper disclosure of

22

confidential information.  This argument was not presented to the district court, and it is therefore not properly before us.  *See Under Seal*, 749 F.3d at 290.  And here too, Dr. Chalifoux does not point to "exceptional circumstances" that justify our consideration of this newly-raised argument.  *See Tarashuk*, 53 F.4th at 167 (citing *Under Seal*, 749 F.3d at 285).  Therefore, we decline to address it at the first instance.

III.

To summarize, the district court conducted an evidentiary hearing on WCH's motion to enforce as our case law requires, and did not err in that respect.  The district court also did not err when it determined that Kaminski acted within his authority to settle this litigation (1) pursuant to the non-economic terms which the record reflects had been mutually agreed upon and (2) for economic payment of $300,000.  The record also supports the court's finding that removal of the NPDB report was not a term of settlement.  Therefore, granting WCH's motion to enforce was not an abuse of discretion.  Finally, Dr. Chalifoux's argument that any settlement agreement should be negated due to WCH's disclosure of confidential information is not properly before us.  Accordingly, the judgment of the district court is

*AFFIRMED.*